UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN COVINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-CV-01667-AGF |
| | ) | |
| CARLINA STUCKEY-PARCHMON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant St. Louis County's ("County") motion (ECF No. 38) to dismiss Plaintiff Kevin Covington's amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

**BACKGROUND**

Taken as true for the purpose of this motion, the facts alleged in the amended complaint are as follows. Plaintiff has been held as a pretrial detainee at the County jail from March 2017 to the present. Throughout this time, he has suffered from epilepsy and hypertension and has therefore been prescribed the following daily medications: Dilantin, Phenobarbital, and Verapamil. On five occasions between May 10 and September 16, 2018, Defendant Carlina Stuckey-Parchmon, a nurse at the jail, refused to give Plaintiff his medications.

Specifically, on or about May 10, 2018, Stuckey-Parchmon refused to give Plaintiff his medications, stating that Plaintiff "would have to get his medications from someone else." ECF No. 33 at ¶ 12. Both Plaintiff and the housing unit officer at the time, Officer Robeinson,[1] asked Stuckey-Parchmon the reason for her refusal, but Stuckey-Parchmon did not respond. Robeinson therefore contacted a supervisor, and seven hours later, another nurse brought Plaintiff his medications.

On June 6, 2018, Stuckey-Parchmon again refused to give Plaintiff medications even though Stuckey-Parchmon was regularly dispensing medications to all other inmates in the unit. Stuckey-Parchmon told Plaintiff and the housing unit manager at the time, Officer Hayden, that she "did not have to give [Plaintiff] shit," and did not "have to give a reason why." *Id.* ¶ 18. Hayden then informed a supervisor, Lieutenant Beard, who asked Stuckey-Parchmon the reason for her refusal. Stuckey-Parchmon informed Beard that she had no reason but that she just would not serve Plaintiff.[2]

Following these incidents, on September 14, 15, and 16, 2018, Stuckey-Parchmon again refused to give Plaintiff his medications.[3] On September 14, Plaintiff was not wearing his identification wristband, and Stuckey-Parchmon asked a unit officer to

---

1 The complaint does not indicate Robeinson's first name or the first name of other officers described herein.

2 The complaint does not indicate whether Plaintiff received his medications after the incident on June 6, 2018; however, Plaintiff's grievance regarding this incident, which was attached to his complaint, reflects that Plaintiff was given his medication 12 hours later. ECF No. 1 at Ex. 1.

3 Neither the complaint nor the attached grievances indicates whether Plaintiff ultimately received his medications on September 14, and 16, 2018.

retrieve Plaintiff's booking card to identify Plaintiff. When Plaintiff asked why Stuckey-Parchmon needed to see his booking card when she already knew who he was, Stuckey-Parchmon threw Plaintiff's medications into the trash and left the unit. The following day, when Plaintiff asked for his medications, Stuckey-Parchmon told Plaintiff to "get away from [her]" and called the next inmate in line for medications. *Id.* ¶ 25. The housing unit officer at the time, Officer Coticchio, instructed Plaintiff to file a grievance and told Plaintiff that he (Coticchio) would "call medical to send someone [else] up to give [Plaintiff] his meds." *Id.* ¶ 26. The next day, Stuckey-Parchmon again refused to give Plaintiff his medications, telling Plaintiff to step out of line. Coticchio then told Plaintiff: "You know what you have to do. You file your grievance and I'll file my report." *Id.*

Plaintiff alleges that as a result of failure to timely receive his regular medications, he suffered headaches and loss of sleep, dangerously high blood pressure, and unhealthy blood sugar levels; and he had to increase his dosage of one or more medications due to the irregular administration.

Following each of these incidents, Plaintiff filed a grievance on the day-of and did not receive any response, notwithstanding that the County Department of Justice Services' Inmate Handbook requires the County to respond to grievances within five days. On September 19, 2018, Plaintiff filed a sixth grievance, complaining that none of his prior grievances had been addressed. Again, Plaintiff did not receive a timely response. He therefore filed a complaint in this Court, pro se, on October 1, 2018. Only after filing this lawsuit did Plaintiff receive a response from the County to his grievance,

in the form of a Formal Inmate Grievance Response Form with the purported date of September 22, 2018, responding to Plaintiff's September 19, 2018 grievance.

On April 22, 2019, the Court granted Plaintiff's motion to appoint counsel, and appointed counsel thereafter sought leave to amend Plaintiff's complaint. On May 31, 2019, the Court granted Plaintiff's motion for leave to amend in part, permitting Plaintiff to add factual allegations against Stuckey-Parchmon and to add municipal liability claims against the County.[4] ECF No. 32.

Plaintiff's amended complaint contains two counts brought pursuant to 42 U.S.C. § 1983. Count I, asserted against Stuckey-Parchmon in her individual capacity and against the County, alleges a violation of Plaintiff's Eighth Amendment rights based on Stuckey-Parchmon's refusal to dispense Plaintiff's medication. Count II, asserted against the County only, alleges a violation of Plaintiff's Fourteenth Amendment rights based on the County's lack of, or disregard of, a grievance process. Plaintiff seeks compensatory and punitive damages.

The County now moves to dismiss both claims against it for failure to state a claim. The County argues that Count I fails to plausibly allege an underlying constitutional violation or municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). As to Count II, the County argues that there is no constitutional right to a prison grievance procedure.

---

[4] The Court denied leave to add a claim against the County's Justice Services Department, which is not a suable entity, and to add a redundant claim against a County official, Julia Childery, in her official capacity. ECF No. 32.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### Deliberate Indifference to Medical Needs (Count I)

For § 1983 liability to attach to the County, Plaintiff must show an underlying constitutional violation and that the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

As to the underlying constitutional violation, while the County correctly asserts that pretrial detainees' rights are examined under the Fourteenth Amendment and not the Eighth, because pretrial detainees are entitled to at least the same level of rights as inmates, the analysis is the same. *See Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017). In both cases, the plaintiff must show "that he suffered from an objectively serious medical need and that one or more defendants "had actual knowledge of that need but deliberately disregarded it." *Id.* "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). And to demonstrate deliberate indifference, a plaintiff

must show that a prison medical provider's "actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id.* at 1066.

Here, Plaintiff has adequately pled a constitutional violation by alleging facts to plausibly demonstrate that he had a medically diagnosed condition requiring medication, which Stuckey-Parchmon intentionally and unjustifiably refused to give him.

As to municipal liability, as relevant here, a plaintiff may establish liability based on "unofficial" policy or a "custom." To do so, a plaintiff must plead facts sufficient to plausibly infer "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct; and (3) that [the plaintiff] was injured by acts pursuant to the municipality's custom, i.e., that the custom was a moving force behind the constitutional violation." *Meier v. St. Louis, Missouri, City of*, 934 F.3d 824, 828 (8th Cir. 2019) (cleaned up and citations omitted).

"[M]ultiple incidents involving a single plaintiff could establish a 'custom' if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828–29 (8th Cir. 2013). At this stage, Plaintiff's allegations of five separate incidents of refusal to provide medication, and notice to supervisors on each occasion, are sufficient to plausibly infer an unofficial policy or custom of constitutional violations. *See, e.g., Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) ("If the same

problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer there is a policy at work.") (citation omitted).

The County argues that it cannot be held liable because, according to Plaintiff's own allegations and grievances, the County investigated the incidents and intervened on at least the first two occasions to find another nurse to administer the medications. But, taking Plaintiff's allegations as true, after those two occasions and despite the County having notice of the issue, Stuckey-Parchmon continued to intentionally deny Plaintiff his medications on at least three more occasions. Moreover, the County did not respond to any of Plaintiff's grievances regarding these issues. It can be reasonably inferred from the complaint that, after receiving notice of the issue, the County did not take sufficient (or any) action to correct Stuckey-Parchmon's behavior. As such, at this stage, Plaintiff's has sufficiently pled municipal liability. *See Hare v. Cty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *2-4 (N.D. Ill. Dec. 15, 2014) (concluding that a single plaintiff's allegations of frequent instances of inadequate medical care in a jail over a 25-day period were sufficient to "provide an implication that" a widespread policy existed of providing all inmates with that particular plaintiff's medical needs with inadequate care). The Court will deny the County's motion to dismiss Count I.

**<u>Grievance Procedure (Count II)</u>**

Although Plaintiff adequately pled a constitutional violation in Count I, the same is not true for Count II. To the extent Count II alleges a constitutional violation arising out of the County's failure to provide or adhere to its written grievance procedure, the claim fails because there is no constitutional right to a prison grievance procedure. *See*

*Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that no constitutional violation arose from officer's failure to process prison grievances because a prison grievance procedure "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment").

Plaintiff suggests in his response to the motion to dismiss that the County's failure to respond to his grievances "are further pleaded facts showing the County's failure to train Stuckey-Parchmon amounted to deliberate indifference towards the constitutional rights of persons with whom Stuckey-Parchmon would interact, and was the cause of the unconstitutional denial of medical treatment Plaintiff has alleged." ECF No. 41 at 1-2. That may be true, but such allegations are therefore pled in support of Count I's claim alleging municipal liability for deliberate indifference to a serious medical need. The County's failure to respond to grievances does not give rise to an independent constitutional violation. *See Buckley*, 997 F.2d at 495. The Court will therefore grant the County's motion to dismiss Count II.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that St. Louis County's motion to dismiss is **GRANTED in part**, as to Count II only, and otherwise **DENIED**. ECF No. 38.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of October, 2019.