UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN COVINGTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:18-CV-01667-AGF ) |
| CARLINA STUCKEY-PARCHMON, et al., | ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Kevin Covington claims in this action filed under 42 U.S.C. § 1983 that Defendants were deliberately indifferent to his serious medical needs in connection with his hypertension while he was a pretrial detainee at the St. Louis County Justice Center ("County jail"). This matter is now before the Court on Defendant Carlina Stuckey-Parchmon's motion (ECF No. 43) for summary judgment, alleging that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons set forth below, the Court will deny the motion.

# BACKGROUND

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, for purpose of the motion before the Court, the record establishes the following. Plaintiff was held as a pretrial detainee at the County jail from March 14, 2017 to June 12, 2019, when he was transferred to the custody of the Missouri Department of Corrections. Throughout this time, he has suffered from hypertension and has therefore

been prescribed the medication Verapamil to be administered daily.[1] On five occasions between May and September, 2018, Stuckey-Parchmon, a nurse at the County jail, refused to give Plaintiff his prescribed medication.

**Incidents**

The first incident took place in early May of 2018. Stuckey-Parchmon refused to give Plaintiff his medications, without reason, and instead merely stated that Plaintiff would have to get his medications "from someone else." ECF No. 46-1 ¶ 4. According to Plaintiff, both he and a housing unit officer, Officer Robeinson,[2] asked Stuckey-Parchmon the reason for her refusal, but Stuckey-Parchmon did not respond. Robeinson therefore contacted a supervisor, and seven hours later, another nurse brought Plaintiff his medications.

Plaintiff alleged in his amended complaint that he believed the date of this first incident was May 10, 2018. But in her Statement of Uncontroverted Facts, Stuckey-Parchmon asserts that she did not work at the jail on May 10, 2018, and she attaches her nurse manager's affidavit attesting to that fact.[3] ECF No. 43-1 ¶ 35. In response to this

---

[1] Plaintiff's amended complaint (ECF No. 33), filed with the assistance of appointed counsel, alleges that Plaintiff was also diagnosed with epilepsy and prescribed anti-seizure medications, which were also withheld from him by Stuckey-Parchmon. *E.g.*, ECF No. 33 ¶¶ 11-12. However, neither party mentions Plaintiff's epilepsy or related medications in the summary judgment briefs.

[2] The complaint does not indicate Robeinson's first name or the first name of other officers described herein.

[3] Stuckey-Parchmon's motion does not challenge the merits of Plaintiff's claims; it argues only that Plaintiff failed to exhaust administrative remedies.

assertion, Plaintiff attests by affidavit that "[i]t's possible, having been incarcerated for over a year at that time that I was mistaken about the exact date [of the first incident]."[4] ECF Nos. 46-1 ¶ 6.

On June 6, 2018, Stuckey-Parchmon again refused to give Plaintiff medications even though Stuckey-Parchmon was regularly dispensing medications to all other inmates in the unit. Stuckey-Parchmon told Plaintiff and a housing unit manager at the time, Officer Hayden, that she "did not have to give [Plaintiff] shit," and did not "have to give a reason why." ECF No. 33 ¶ 18. Hayden then informed a supervisor, Lieutenant Beard, who asked Stuckey-Parchmon the reason for her refusal. Stuckey-Parchmon informed Beard that she had no reason but that she just would not serve Plaintiff. The County jail's Medical Administration Record for Plaintiff for the month of June 2018 indicates that Plaintiff did not receive any of his medications, including Verapamil, from June 4 through June 6, 2018.

Thereafter, on September 14, 15, and 16, 2018, Stuckey-Parchmon again refused to give Plaintiff his medications. On September 14th, Plaintiff was not wearing his identification wristband, and Stuckey-Parchmon asked a unit officer to retrieve Plaintiff's booking card to identify Plaintiff. After the officer retrieved Plaintiff's booking card and

---

[4] The jail's "Medication Administration Record" for Plaintiff for the month of May 2018 reflects that Plaintiff was given his prescription medications, including Verapamil, on May 10, 2018. However, the same Record indicates that Plaintiff was not given any of his medications two days later, on May 12, 2018. Thus, Plaintiff suggests that the date of this first incident could have been May 12, 2018. ECF No. 46 ¶¶ 13, 35.

3

showed it to Stuckey-Parchmon, Stuckey-Parchmon threw Plaintiff's medications into the trash and left the unit.

The following day, when Plaintiff was in line for his medications, Stuckey-Parchmon told Plaintiff to step out of line and called the next inmate in line for medications. A housing unit officer at the time, Officer Coticchio, instructed Plaintiff to file a grievance and told Plaintiff that he (Coticchio) would "call medical to send someone [else] up to give [Plaintiff] his meds." ECF No. 33 ¶ 26.

The next day, Stuckey-Parchmon again refused to give Plaintiff his medications, telling Plaintiff to step out of line. Coticchio then told Plaintiff: "You know what you have to do. You file your grievance and I'll file my report." *Id.* ¶ 29. Plaintiff attests that he ultimately received his September 15, 2018, medication later in the day by a different member of the medical staff. ECF No. 46-1 ¶ 30. Plaintiff's affidavit and other filings do not indicate whether he ultimately received his medication on September 14 or 16, 2018, but the jail's Medication Administration Record for Plaintiff for the month of September 2018 indicates that he received all medications on September 14, 15, and 16, 2018.[5]

Plaintiff alleges that as a result of not timely receiving his regular medications, he suffered headaches, anxiety, loss of sleep, dangerously high blood pressure, and

---

[5] Stuckey-Parchmon's motion also discusses incidents referenced in Plaintiff's initial complaint that allegedly took place on September 17, 18, and 19, 2018. However, Plaintiff's amended complaint, which is the operative complaint, does not reference those incidents.

unhealthy blood sugar levels; and that he had to increase his dosage of one or more medications due to the irregular administration.

**Grievances**

The County jail provides a copy of the "Inmate Handbook" to all inmates upon intake, and it provided one to Plaintiff. The Inmate Handbook describes the grievance procedure at the County Jail as follows:

> **GRIEVANCE PROCEDURE**
>
> The formal grievance procedure is a standard written procedure used to settle legitimate complaints concerning an incident, policy, or condition within the jail. You are encouraged to attempt to resolve your problem or concern by talking to your Housing Unit Officer and/or the staff member responsible in the particular area of concern in an attempt to solve the issue[s] presented. After you have exhausted all efforts through the informal process and are unable to resolve the problem, you may then choose to file a formal grievance in the following manner:
>
> 1. Request an Inmate Grievance form from your Housing Unit Office and/or Unit Case Manager.
>
> 2. Complete the grievance form, outlining the reason for the grievance and include the rule, regulation, policy, or circumstance.
>
> 3. A grievance must be filed within five (5) days from the date of the incident or event that is the basis for the grievance, unless circumstances make it unreasonable to file within that time.
>
> 4. Relate specific details in the grievance such as the date, time, and location of the incident, any witnesses and any and all related information.
>
> 5. Include all actions you took to solve the problem and what staff members you contacted or talked to regarding your problem, concern, or complaint.
>
> 6. The grievance must include the date it is being filed along with your name and signature, your inmate number, and housing unit.
>
> 7. Submit the grievance to your Unit Case Manager or Housing Unit Supervisor.

8. A written response to your grievance will be received within five (5) working days of the time it was received, unless review of your grievance requires additional time. You will be advised if the response will take more than 5 days

9. Grievances must be filed by each individual; group grievances are unacceptable.

10. Grievances that are determined to be of a frivolous nature shall receive a response in writing to that effect.

11. Disciplinary sanctions administered to you by an officer are not grievable issues as long as they are within departmental guidelines.

**Grievance Appeal Process**

1. The appeal should be submitted to the Unit Caseworker and/or the Housing Unit Supervisor within three (3) working days to be forwarded to the Division Superintendent

2. The appeal investigation should be conducted within five (5) working days of the Division Superintendent receiving your appeal.

3. In the event the time limit to respond to the appeal is insufficient due to extenuating circumstances, you will be notified in writing.

4. There is only one level of appeal.

ECF No. 43-1 ¶¶ 5-8 & ECF No. 43-2 at 12-13.

Plaintiff alleges that he filed six grievances related to the incidents described above and that he received no response to any grievance before he filed suit in this Court on October 1, 2018. Plaintiff has attached copies of the grievances to his complaint, and each is contained on a "Department of Justice Services Formal Inmate Grievance Form." ECF No. 1-1.

In an affidavit attached to his summary judgment opposition brief, Plaintiff further describes each grievance. Specifically, Plaintiff attests that he prepared a grievance on

the date of the May 2018 incident and submitted it to Lieutenant Beard that same date, but that Lieutenant Beard refused to sign or date the grievance. ECF No. 46-1 ¶ 7. Plaintiff attests that "[Lieutenant] Beard was a Housing Unit Supervisor for [his] unit." *Id.* ¶ 8. Plaintiff never received a response to this grievance.

The copy of the May 2018 grievance attached to Plaintiff's complaint is signed by Plaintiff and dated May 10, 2018, and reiterates the incident described above, stating that it occurred on May 10, 2018 at approximately 9:34 a.m. ECF No. 1-1 at 1. It contains a signature line to be signed and dated by the official receiving the grievance, but that line is not signed by any official. Rather, that line contains what appears to be Plaintiff's handwritten note stating "Lieutenant Beard received Grievance at 1:15 pm. But refuse to sign." *Id.* Below the signature line is a handwritten note in unidentified handwriting, stating "Requested Copy On 9-20-18" next to what appear to be initials "WB." *Id.*

Plaintiff attests that he prepared the second grievance on the date of the second incident, June 6, 2018 and submitted it to "Lieutenant Jones, whom [he] believed to have been [his] Housing Unit Supervisor on [that] date." ECF No. 46-1 ¶¶ 15-16. Plaintiff attests that Lieutenant Jones refused to sign or date the grievance indicating his receipt and that Plaintiff never received a response to the grievance. *Id.* ¶¶ 17-18.

The copy of the second grievance attached to the complaint is signed by Plaintiff and dated June 6, 2018, and reiterates the June 6, 2018 incident described above. It, too, is not signed by an official but contains what appears to be Plaintiff's handwritten note that "Lieutenant Jones received grievance but refuse to sign. Time received 1:37 pm."

ECF No. 1-1 at 3.  It likewise contains a note in unidentified handwriting below the signature line, stating "Requested Copy 9-20-18 6/6/18."  *Id.*

Plaintiff attests that he prepared the third grievance on the date of the third incident, September 14, 2018 and that he "submitted [it] to [his] Housing Unit Supervisor."  ECF No. 46-1 ¶¶ 24.  Like the first two, the copy of the third grievance attached to the complaint is signed by Plaintiff and dated September 14, 2018, and reiterates the September 14, 2018 incident described above, noting that it was the third time Stuckey-Parchmon refused to give Plaintiff his medication.  It, too, is not signed by an official but contains what appears to be Plaintiff's handwritten note: "Picked up by Lt. Lewis at 1:27 pm 9/14/17 Lt. Lewis refuse to acknowledge he received this Grievance from me by not signing the form."  ECF No. 1-1 at 5.  This third grievance does not contain any handwritten note stating the date on which a copy was requested.  *Id.*

It is undisputed that this grievance dated September 14, 2018 is the only grievance contained in Plaintiff's file.  Stuckey-Parchmon attaches what she asserts is a copy of the September 14, 2018 grievance that is contained in Plaintiff's inmate file.  ECF No. 43-3.  This copy differs in several respects from the one attached to Plaintiff's complaint.  For example, it does not contain the handwritten note as to whom Plaintiff submitted the grievance.  *Id.*  It also contains a misspelling of Stuckey-Parchmon's first name, referring to her as "Nurse Karlena," whereas the copy of the grievance attached to Plaintiff's complaint does not contain this error.  *Compare* ECF No. 43-3, *with* ECF No. 1-1 at 5.

The grievance dated September 14, 2018 is also the only grievance to which the County jail responded.  The jail's response is contained on a "Formal Inmate Grievance

Response Form" and states: "In response to your grievance filed on 9/18/18, the following has been determined and/or decided: I am planning on speaking to Nurse Carlina this afternoon regarding this incident." ECF No. 43-4. The response is signed by Amy Janssen, R.N. Supervisor, Infirmary" and dated September 27, 2018. *Id.* It also states that the "response may be appealed to the Division Superintendent within three (3) days of this response." *Id.*

The response contains a signature and date line for the inmate to sign, with a disclaimer that "Signature of the inmate acknowledges receipt of the Grievance Response and notice of his/her rights to appeal." *Id.* But the response is not signed by Plaintiff, and although the parties agree that Plaintiff ultimately received the response, they dispute when he did so.

Stuckey-Parchmon contends that, although the grievance is dated September 14, 2018, it was not filed until September 18, 2018, and Plaintiff received the response on September 27, 2018. In support of this contention, Stuckey-Parchmon relies on the response form itself. However, Plaintiff attests that he "did not receive any response to [his] September 14, 2018 grievance . . . until after [he] had filed [his] initial complaint in this Court on October 1, 2018 . . . ." ECF No. 46-1 ¶ 25.

Plaintiff attests that he prepared the fourth grievance on the date of the fourth incident, September 15, 2018, but that "this time [he] submitted it to the medical department because [he] had received no responses to [his] prior three grievances that [he] had submitted to [his] Housing Unit Supervisors." ECF No. 46-1 ¶ 31. Plaintiff attests that he never received any response to the fourth grievance. *Id.* ¶ 32.

9

Like the others, the copy of the fourth grievance attached to the complaint is signed by Plaintiff and dated September 15, 2018; reiterates the September 15, 2018 incident described above; and is not signed by an official but contains what appears to be Plaintiff's handwritten note: "Turn into Medical on 9/15/18 at 10:27 a.m." ECF No. 1-1 at 7. Like the first grievance, this grievance also contains a note in unidentified handwriting below the signature line, stating "Requested Copy 9-20-18" next to the initials "WB." *Id.*

Plaintiff attests that he prepared the fifth grievance on the date of the final incident, September 16, 2018; that he submitted the grievance to Lieutenant Lewis at 12:50 p.m. that day; that "Lt. Lewis was a Housing Unit Supervisor for [his] Unit"; and that Plaintiff never received a response to the grievance. ECF No. 46-1 ¶¶ 34-37.

Like the others, the copy of the fifth grievance attached to the complaint is signed by Plaintiff and dated September 16, 2018; reiterates the September 16, 2018 incident described above, noting that it was the fifth such incident; and is not signed by an official but contains what appears to be Plaintiff's handwritten note: "Turn in to Lieutenant Lewis on 9/16/18 at 12:50 pm  Refuse to sign." ECF No. 1-1 at 8. Like the first and fourth grievances, the fifth grievance contains a note in unidentified handwriting below the signature line, stating "Requested Copy 9-20" next to the initials "WB." *Id.*

Plaintiff attests that on September 19, 2018, after having received no response to his five prior grievances, he filed a sixth grievance regarding the County's failure to respond to his grievances. After five business days thereafter passed without a response

from the County, Plaintiff prepared his initial complaint in this action, which was filed on October 1, 2018.  ECF No. 46-1 ¶ 38-39.

Like the others, the copy of the sixth grievance attached to the complaint is signed by Plaintiff and dated September 19, 2018; states that the County failed to act upon the five written complaints Plaintiff made about Stuckey-Parchmon; and is not signed by an official.  ECF No. 1-1 at 9.  It does not contain any handwritten notes indicating to whom Plaintiff submitted it, but, like many of the other grievances, it contains a note in unidentified handwriting below the signature line, stating "Requested Copy 9-20-18" next to the initials "WB."  *Id.*

Plaintiff attests that "[t]hroughout the entire process, between May and September of 2018 when [he] filed the six above-mentioned grievances, [County] jail staff continually refused to provide [him] with copies of the grievances [he] had filed.  It was not until [his] request on September 20, 2018 that [he] was provided copies of all the grievances that [he] had filed . . . ."  ECF No. 46-1 ¶ 40.

Stuckey-Parchmon has submitted evidence, by way of an affidavit of Ken Reed, the Unit Manager of the pod where Plaintiff was housed at the time of the incidents alleged, indicating that, according to the County jail's records, the Housing Unit Supervisor for Plaintiff's unit on the dates at issue was as follows: Lieutenant A. Lewis on May 10, 2018 at 1:15 p.m.; Lieutenant N. Beard on June 6, 2018 at 1:37 p.m.; and "Lieutenant ~~A. Lewis~~ N. Beard"[6] on September 16, 2018 at 12:50 pm.  ECF No. 43-6 ¶¶

---

5.    The striking of the name "A. Lewis," and adding of the name "N. Beard," is done by hand.  ECF No. 43-6 ¶ 8.

11

4-8. Stuckey-Parchmon has not submitted evidence as to the identity of the Housing Unit Supervisor on the dates of the other incidents or the identity of the Unit Case Manager on any of the dates in question.

**ARGUMENTS OF THE PARTIES**

Stuckey-Parchmon argues that the only grievance Plaintiff properly filed under the County jail's grievance policy was the grievance dated September 14, 2018, and that Plaintiff failed to exhaust administrative remedies with respect to that grievance by failing to appeal it. As to the other grievances, Stuckey-Parchmon argues that the grievances were either improperly filed or fabricated.

Specifically, Stuckey-Parchmon argues that if these other grievances were submitted on the dates that Plaintiff alleges they were submitted, then they were improperly filed because they were not submitted to either the Housing Unit Supervisor or the Unit Case Manager, as the Inmate Handbook requires. Stuckey-Parchmon relies on Reed's affidavit to contend that Lieutenant A. Lewis was the Housing Unit Supervisor on May 10, 2018 at 1:15 p.m., whereas Plaintiff claims he provided his grievance of that date and time to Lieutenant Beard; that Lieutenant Beard was the Housing Unit Supervisor on June 6, 2018 at 1:15 p.m., whereas Plaintiff claims he provided his grievance of that date and time to Lieutenant Jones; that the "medical" department to which Plaintiff claims he provided the grievance dated September 15, 2018 is neither a Unit Case Manager or Housing Unit Supervisor; and that Lieutenant Beard was the

Housing Unit Supervisor on September 16, 2018 at 1:15 p.m., whereas Plaintiff claims he submitted his grievance of that date and time to Lieutenant Lewis.[7]

Alternatively, Stuckey-Parchmon argues that these other grievances "appear to have been fabricated" because the incidents about which they complain are contradicted by other evidence in the record. For example, Stuckey-Parchmon cites evidence she was not working at the jail on at least one of the dates in question and, as to other dates, Plaintiff's Medication Administration Record indicates that Plaintiff received all of his medications. Although Stuckey-Parchmon does not challenge the merits of Plaintiff's claims in her motion, she contends that these inconsistencies and others undermine Plaintiff's credibility and suggest that the grievances may have been created by Plaintiff after filing suit.

Stuckey-Parchmon asserts that Plaintiff's affidavit does not create a question of fact as to these issues because it is self-serving.[8] However, Stuckey-Parchmon suggests that if the current record is insufficient to determine any necessary credibility or factual issues surrounding exhaustion, the Court should hold an evidentiary hearing to resolve these issues.

---

[7] Stuckey-Parchmon also asserts that the Unit Case Manager must be a social worker and that none of the officials to whom Plaintiff alleges he submitted his grievances is a social worker. However, Stuckey-Parchmon cites no evidence in support of these contentions. *See* ECF No. 43-9 at 7-9.

[8] Stuckey-Parchmon notes that Plaintiff, through appointed counsel, sought and received a four-month extension of time to conduct necessary discovery in order to respond to Stuckey-Parchmon's early-filed motion for summary judgment, *see* ECF No. 32, but Plaintiff has not conducted any discovery to date.

In response, Plaintiff, through appointed counsel, argues that summary judgment is not appropriate because questions of fact exist as to whether Plaintiff properly filed each of his grievances; whom the Housing Unit Supervisor was on each of the relevant dates; and whether Plaintiff received a response to any of these grievances before he filed suit. Plaintiff notes that none of the grievances—including the grievance that Stuckey-Parchmon admits was properly filed—is signed or dated by any jail official reflecting the official's receipt, and that the jail's purported September 22, 2018 response is likewise not signed or dated by Plaintiff to indicate his receipt.

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences that may be reasonably drawn [therefrom] in the light most favorable to the non moving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (internal citations omitted).

### Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[9] The PLRA requires "proper" exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules . . . that are defined . . . by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 99 (2006)). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id.*

Exhaustion is mandatory, but failure to exhaust is an affirmative defense, and the defendant has the burden of proving non-exhaustion. *Id.* at 212; *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015). Moreover, the defendant must prove that the prisoner failed to exhaust *each* of his claims, as there is no "total exhaustion" rule permitting dismissal of an entire action in which some, but not all, claims are unexhausted. *Jones*, 549 U.S. at 220–24.

The Supreme Court has observed that "the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (cleaned up). The Supreme Court recognizes at least three circumstances where an administrative remedy is unavailable: "(1) where it operates as a simple dead end— with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates;

---

[9] A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Therefore, the exhaustion requirement applies to pretrial detainees like Plaintiff was at the time he filed suit. *Hanks v. Prachar*, No. CIV 02-4045 MJD/RLE, 2009 WL 702177, at *6 (D. Minn. Mar. 13, 2009).

15

(2) where the administrative scheme is so opaque as to be practically incapable of use; and (3) where administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (emphasis in original) (citing *Ross*, 136 S. Ct. at 1859-60).

Likewise, the Eighth Circuit has held that prison grievance procedures are not "available" under the PLRA "[1] when officials have prevented prisoners from utilizing the procedures, or [2] when officials themselves have failed to comply with the grievance procedures." *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001); *Foulk v. Charrier*, 262 F.3d 687 (2001)).

The Eighth Circuit and its sister circuits have consistently held that a prison's failure to timely respond to a prisoner's properly filed grievance renders its grievance procedure "unavailable" under the PLRA. *See Foulk*, 262 F.3d at 698 (holding that an inmate was not required to file a grievance in order to exhaust administrative remedies when the prison failed to respond to an informal review request that was a prerequisite to his ability to file a grievance); *see also Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) ("Five of our sister courts have held that a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA.") (collecting cases, including *Foulk*).

Here, the Court agrees with Plaintiff that material questions of fact remain as to whether Plaintiff properly filed his grievances and whether the County jail failed to timely respond, so as to render its remedies "unavailable" under the PLRA. Specifically,

16

questions of fact exist as to whether, when, and to whom Plaintiff submitted each of his grievances; whom the Housing Unit Supervisor and/or Unit Case Manager was at the time Plaintiff submitted each grievance;[10] and whether Plaintiff received a response to any of his grievances before he filed suit.[11]

Stuckey-Parchmon's evidence does not conclusively answer these questions. Moreover, her evidence is directly contradicted on many points by Plaintiff's sworn affidavit. And contrary to Stuckey-Parchmon's assertion, "the self-serving nature of affidavits . . . [does not] serve to make such evidence inherently infirm" at the summary judgment stage. *See Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015). This is particularly true where, as here, the affidavit is supported by at least some documentary evidence in the form of the grievances attached to Plaintiff's complaint. The differences among various copies of certain grievances, and other inconsistencies in the record, raise credibility issues that are not proper for resolution on a summary judgment motion. *See Harp v. Sec'y of Corr.*, No. Civ. 11-4149-KES, 2013 WL 416645, at *4 (D.S.D. Jan. 31, 2013) (holding that if an inmate's "attempts at filing . . . administrative remedy requests

---

[10] Stuckey-Parchmon's own evidence indicates some confusion on this point. As noted above, Reed's affidavit appears to have been altered with respect to the identity of the Housing Unit Supervisor on September 16, 2018, with a handwritten edit crossing out name "Lewis" (whom Plaintiff contended was the Supervisor) and replacing it with "Beard." Stuckey-Parchmon does not mention or explain this alteration in her motion.

[11] Any response received after Plaintiff filed suit is irrelevant to the exhaustion question. The PLRA states that "[n]o action shall be *brought* with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Exhaustion is therefore measured "at the time the action is filed." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).

were, in fact, ignored by defendants, then those remedies were not actually available," and that "[a]lthough [the inmate's] only evidence of these alleged requests are his own statements to that effect, the court finds such evidence is sufficient to raise a genuine issue of material fact under the circumstances").

The County jail's grievance policy provides that inmates "will" receive a written response within five working days of the time the grievance is received, and that they "will" be advised if a response will take more than five days. And Stuckey-Parchmon has not suggested that the grievance policy here directed—or even permitted—Plaintiff to file an appeal if he never received a response. *See, e.g.*, *Foulk*, 262 F.3d at 698 ("Charrier points to no evidence in the trial record which establishes that Foulk could indeed have filed a grievance despite MDOC's failure to respond to his IRR."); *Small v. Camden Cty.*, 728 F.3d 265, 273 (3d Cir. 2013) (holding that a grievance appeal process was "unavailable" under the PLRA when the inmate received no response to his grievances and the grievance procedures "[did] not mention what must or even could be done by the inmate when a decision [was] never made"); *cf. Crowley v. Nailor*, 783 F. App'x 637, 637 (8th Cir. 2019) (per curiam) (holding that a prisoner failed to exhaust his administrative remedies where "the prison's policy allowed inmates to appeal even if they received no response to their grievances," and prisoner could have but did not appeal his unanswered grievances). Thus, if Plaintiff properly filed his grievances and received no response before filing suit, then no administrative remedies were available to exhaust.

For these reasons, the Court will deny Stuckey-Parchmon's motion for summary judgment. However, the Court will adopt her alternative suggestion to hold an

evidentiary hearing on the issue of exhaustion. Although the Eighth Circuit has not addressed the issue of whether the court or a jury should decide questions of material fact concerning compliance with the duty to exhaust, other circuits have held that such questions should be decided by the court. *See, e.g.*, *Small*, 728 F.3d at 271 (collecting cases and holding that the Third Circuit "agree[s] with the Second, Fifth, Seventh, Ninth, and Eleventh Circuits . . . that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury"); *see also Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008) (holding the same and further noting that, if the court finds that the case may proceed to a jury trial, "the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies").

The Court will ask the parties to meet and confer regarding the procedures and schedule for such an evidentiary hearing, as well as the continued litigation of this case. As discovery is now closed under the current Case Management Order (ECF No. 19), any party seeking discovery with respect to the issue of exhaustion must obtain consent from the opposing party or show good cause why the discovery deadline should be extended. Trial will be set, if appropriate, after the Court rules on the issue of exhaustion.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Carlina Stuckey-Parchmon's for summary judgment is **DENIED**. ECF No. 43.

19

**IT IS FURTHER ORDERED** that the parties shall meet and confer in good faith and, on or before **January 14, 2020**, submit a joint proposed scheduling plan to govern the continued litigation of the case, including (1) a proposed schedule for an evidentiary hearing regarding exhaustion, including any agreements regarding discovery and any pre- or post-hearing briefing, as well the estimated length of a hearing; (2) the parties' positions concerning referral of the action to mediation, and when such a referral would be most productive; (3) the earliest date by which this case should reasonably be expected to be ready for trial; and (4) an estimate of the length of time expected to try the case to verdict.

**IT IS FURTHER ORDERED** that trial will be set, if appropriate, after the Court rules on the issue of exhaustion.

_____<br>
AUDREY G. FLEISSIG<br>
UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2019.