UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN COVINGTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:18-cv-01667-SEP |
| CARLINA STUCKEY-PARCHMON, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is the issue of whether Plaintiff Kevin Covington exhausted his administrative remedies. The Court held an evidentiary hearing on April 7, 2021, at which Plaintiff and Defendants presented evidence concerning exhaustion. For the reasons set forth below, the Court finds that Plaintiff has exhausted his administrative remedies as to the September 14 grievance only. All claims arising from the May 10, June 6, September 15, September 16, and September 19 grievances are dismissed for failure to exhaust administrative remedies.

### FACTS AND BACKGROUND

Plaintiff Kevin Covington is an inmate currently incarcerated at Missouri Eastern Correctional Center (MECC) in Pacific, Missouri. He was a pretrial detainee at the St. Louis County Justice Center ("County jail") from March 14, 2017, to June 12, 2019, at which time he was transferred to the custody of the Missouri Department of Corrections. While at the County jail, Covington suffered from epilepsy and hypertension, for which he was prescribed Dilantin, phenobarbital, and verapamil, to be administered daily. Doc. [33] ¶ 11. Covington alleges that Defendant Carlina Stuckey-Parchmon, a nurse at the County jail, refused to administer his prescribed medications on five separate occasions. Covington filed this action on October 1, 2018, alleging that Defendants were deliberately indifferent to his serious medical needs while he was detained at the County jail. Doc. [1]; *see also* Doc. [33] (Amended Complaint). Defendants include Nurse Carlina Stuckey-Parchmon and the St. Louis County.

Defendants filed a Motion for Summary Judgment on May 7, 2019, arguing that Covington failed to exhaust the administrative remedies for each of his six grievances. In order

1

to properly exhaust them, Plaintiff must have followed the procedures describes in the "Inmate Handbook."  The County jail provides a copy of the handbook to each inmate upon intake, including to Covington.  *See* Doc. [75] at 12.  The grievance procedure is as follows:

> **GRIEVANCE PROCEDURE**
>
> The formal grievance procedure is a standard written procedure used to settle legitimate complaints concerning an incident, policy, or condition within the jail.  You are encouraged to attempt to resolve your problem or concern by talking to your Housing Unit Officer and/or the staff member responsible in the particular area of concern in an attempt to solve the issue[s] presented.  After you have exhausted all efforts through the informal process and are unable to resolve the problem, you may then choose to file a formal grievance in the following manner:
>
> 1. Request an Inmate Grievance form from your Housing Unit Office and/or Unit Case Manager.
> 2. Complete the grievance form, outlining the reason for the grievance and include the rule, regulation, policy, or circumstance.
> 3. A grievance must be filed within five (5) days from the date of the incident or event that is the basis for the grievance, unless circumstances make it unreasonable to file within that time.
> 4. Relate specific details in the grievance such as the date, time, location of the incident, any witnesses and any and all related information.
> 5. Include all actions you took to solve the problem and what staff members you contacted or talked to regarding your problem, concern, or complaint.
> 6. The grievance must include the date it is being filed along with your name and signature, your inmate number, and housing unit.
> 7. Submit the grievance to your Unit Case Manager or Housing Unit Supervisor.
> 8. A written response to your grievance will be received within five (5) working days of the time it was received, unless review of your grievance requires additional time.  You will be advised if the response will take more than 5 days.
> 9. Grievances must be filed by each individual; group grievances are unacceptable.
> 10. Grievances that are determined to be of a frivolous nature shall receive a response in writing to that effect.
> 11. Disciplinary sanctions administered to you by an officer are not grievable issues as long as they are within departmental guidelines.

**Grievance Appeal Process**
1. The appeal should be submitted to the Unit Caseworker and/or the Housing Unit Supervisor within three (3) working days to be forwarded to the Division Superintendent.
2. The appeal investigation should be conducted within five (5) working days of the Division Superintendent receiving your appeal.
3. In the event the time limit to respond to the appeal is insufficient due to extenuating circumstances, you will be notified in writing.
4. There is only one level of appeal.

Doc. [43-2] at 12-13. Defendants claim Covington failed to follow the grievance procedure because he did not properly file five of the alleged grievances and did not appeal the one properly filed grievance. This Court denied the Motion for Summary Judgment, holding:

> [M]aterial questions of fact remain as to whether Plaintiff properly filed his grievances and whether the County jail failed to timely respond, so as to render its remedies 'unavailable' under the [Prisoner's Litigation Reform Act]. Specifically, questions of fact exist as to whether, when, and to whom Plaintiff submitted each of his grievances; who[] the Housing Unit Supervisor and/or Unit Case Manager was at the time Plaintiff submitted each grievance; and whether Plaintiff received a response to any of his grievances before he filed suit.

Doc. [51] at 17-18. The Court instead ordered an evidentiary hearing on the issue of exhaustion. The hearing was held on April 7, 2021. The Court heard testimony from Covington and Superintendent Reed, who was a floor major assigned to Covington's floor at the time of the alleged events. *See* Doc. [75] at 32.

### LEGAL STANDARD

As the Court discussed in its Summary Judgment Order, the Eighth Circuit has not addressed the issue of whether the court or a jury should decide questions of material fact concerning compliance with the duty to exhaust. *See* Doc. [51] at 19. However, other circuits have held that such disputed material questions should be decided by the court. *See, e.g.*, *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d. Cir. 2013) (collecting cases and holding that the Third Circuit "agree[s] with the Second, Fifth, Seventh, Ninth, and Eleventh Circuits . . . that judges may resolve factual disputes relevant to the exhaustion issue without the participate of a jury"); *see also Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *as amended on denial of reh'g and*

*reh'g en banc* (Sept. 12, 2008) (holding the same and further noting that, if the court finds that the case may proceed to a jury trial, "the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies."). "[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small¸* 728 F.2d at 269.  In doing so, the Court reviews testimony and documentary evidence and makes credibility determinations. *Id.* at 271.

## DISCUSSION

The Prisoner's Litigation Reform Act requires that a prisoner exhaust all available administrative remedies prior to bringing an action in federal court.  42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 523-24 (2002).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Exhaustion is mandatory, and failure to exhaust is an affirmative defense that the defendant has the burden to prove. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).  It is immaterial whether the inmate "subjectively believed that there was no point in pursuing administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (en banc).  "If an inmate has filed some grievance documents but has not followed all policies of the prison's administrative grievance process, the court must dismiss the inmate's claim." *Human v. Hurley*, 2018 WL 1519376, at *3 (E.D. Mo. Mar. 28, 2018).  Moreover, the defendant must prove that the prisoner failed to exhaust each of his claims, as there is no "total exhaustion" rule permitting dismissal of an entire action in which some, but not all, claims are unexhausted. *Jones,* 549, U.S. at 220-24.

"[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 1174, 1858 (2016).  As this Court detailed in its Order, the Supreme Court recognizes at least three circumstances where an administrative remedy is unavailable:

> where "it operates as a simple dead end—with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates"; (2) where the "administrative scheme" is "so opaque" as to be practically "incapable of use"; and (3) where "administrators thwart inmates from taking advantage of a grievance process though machination, misrepresentation, or intimidation."

4

*Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (emphasis in original) (citations omitted) (quoting *Ross*, 578 U.S. at 1853-54). A grievance procedure is "unavailable" under the PLRA (1) when officials have prevented prisoners from utilizing the procedures, or (2) when officials themselves have failed to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) and *Foulk v. Charrier*, 262 F.3d 687 (2001)). The Eighth Circuit has consistently held that a prison's failure to timely respond to a prisoner's properly filed grievance renders its grievance procedure "unavailable" under the PLRA. *See Foulk*, 262 F.3d at 698 (holding that an inmate was not required to file a grievance in order to exhaust his administrative remedies when the prison failed to respond to an informal review request, which was a prerequisite to the inmate's ability to file a grievance); *see also Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d. Cir. 2016) (noting "[f]ive of our sister courts have held that a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA" and collecting cases, including *Foulk*).

The inmate grievance procedure dictates that to properly exhaust administrative remedies, an inmate must file a formal grievance with his Housing Unit Supervisor (HUS) or Unit Case Manager within five working days of the incident. The County jail is then required to respond to the grievance within five working days. Once an inmate gets a response, he has three days to file an appeal. An inmate's failure to follow any of those procedures means he has not exhausted his administrative remedies.

Plaintiff contends that he properly filed each grievance but never received a timely response from the County jail. In addition to addressing each grievance individually, Plaintiff presents an overarching argument: Because there are disputes of material fact as to whether Plaintiff filed his grievances with the appropriate HUS,[1] the Court cannot determine that Covington failed to exhaust his administrative remedies. *See* Doc. [78] at 2. A genuine dispute of material fact is sufficient reason to deny a summary judgment motion, *see* [51] at 16-17, but here the Court is acting as the factfinder and deciding the remaining disputed questions of fact. *See Small*, 728 F.3d at 271 ("[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury"). The Court must review the evidence presented at the

---

[1] Plaintiff never alleges that he submitted a grievance to a Unit Case Manager. As such, the Court decides only whether Plaintiff properly filed his grievances with his HUS.

5

hearing as well as the post-hearing briefings and conduct a credibility analysis to determine whether Covington exhausted his administrative remedies. The Court will address each grievance separately.

### A. May 10 Grievance

Covington claims that on May 10, 2018, Stuckey-Parchmon refused, without reason, to administer his medications, stating that "[he] would have to get his medications from someone else because [she] was not going to" serve him. Doc. [33] ¶ 12. According to Covington, he submitted to Lieutenant Beard a formal grievance at 1:15 p.m. that day, but Lieutenant Beard refused to sign it. Docs. [75] at 18, 28; [1-1] at 1. Despite the jail's requirement that a response be delivered to an inmate within five working days, Covington never received a response to his grievance. Doc. [33] ¶ 16.

Defendants respond with evidence demonstrating that Lieutenant Beard was not present on May 10 because he was on Family Medical Leave (FML) from May 10, 2018, until May 20, 2018. *See* Docs. [76-2]; [76-9] at 40-41. According to an affidavit by Ken Reed, the Unit Manager of Covington's pod, the County's jail records indicate that Lieutenant A. Lewis was the HUS on May 10 at 1:15 p.m. Doc. [43-6] at 2. For Covington's grievance to be properly filed, Defendant explains, Covington would have had to submit it to Lieutenant Lewis. Covington does not allege, and certainly does not present evidence showing, that he submitted the form to Lieutenant Lewis.

Additionally, the jail's "Medication Administration Record" reflects that Covington was given his prescription medications on May 10, 2018, and Covington presents no evidence to the contrary. Doc. [43-7] at 212. Covington did not receive his medication on May 12, however. Covington suggests in his affidavit that the incident could have occurred on May 12 and he was "mistaken about the exact date." Doc. [46-1] ¶ 6. He did not make that argument at the hearing, but Lieutenant Beard was still on FML on May 12; thus, it is immaterial to the Court's analysis whether the incident occurred on May 10 or May 12. The evidence demonstrates that on either day, Plaintiff did not turn his grievance into his HUS, Lieutenant Lewis. Because Covington failed to follow the grievance procedure as stated in the Inmate Handbook, he did not exhaust his administrative remedies as to the May 10 grievance.

### B. June 6 Grievance

Covington claims that on June 6, 2018, at 9:15 a.m., Stuckey-Parchmon again refused to administer his prescribed medications. Doc. [33] ¶ 17. Stuckey-Parchmon told Covington and the HUS at the time, Officer Hayden, that she "[did] not have to give [Covington] shit," and that "[she didn't] have to give a reason why." *Id.* ¶ 18. Officer Hayden called in her supervisor, Lieutenant Beard, to question Stuckey-Parchmon about the incident, and she reiterated her refusal to administer. *Id.* ¶ 19. Covington claims he filed a formal, written grievance to Lieutenant Jones at 1:37 p.m., who he believed was his HUS. *Id.* ¶ 20; Doc. [46-1] ¶ 16; *see* Doc. [78] at 2. Covington attached the alleged grievance to his Amended Complaint, see Doc. [28-3], and claims he never received a response. Superintendent Reed attests that Covington's HUS at 1:37 p.m. was Lieutenant Beard. Doc. [43-6] ¶ 7. Even taking Covington's statement as true—that he timely filed the grievance with Lieutenant Jones—he failed to exhaust the administrative remedy because he did not submit his grievance to his HUS.

### C. September 14 Grievance[2]

Covington claims the third incident occurred on September 14, 2018, at 9:25 a.m. *See* Doc. [28-4] at 1. Covington was not wearing his jail-issued identification wrist band when Stuckey-Parchmon was administering medications, so she insisted that the unit officer retrieve Covington's booking card before she would serve him. Doc. [33] ¶ 22. When Covington questioned her demand, Stuckey-Parchmon "threw [Covington's medications] in the trash and left the unit." *Id.*

---

[2] The Court received two copies of the September 14 grievance with slight variations. *Compare* Doc. [1-1] at 4, *with* Doc. [43-4]. However, when moving to amend the Complaint, Plaintiff again attached the six grievances and included Defendants' version, Doc. [43-4]. At the hearing the Court asked Plaintiff for clarification regarding the discrepancies. Covington explained that the grievance attached to the Complaint was not the original; he rewrote the grievance because the original got wet. *See* Doc. [75] at 14-15. The only difference between the copies, aside from technical differences like grammar and spelling, is that the version attached to the original Complaint includes Plaintiff's handwritten notation that the grievance was "[p]icked up by Lt. Lewis at 1:27 pm 9/14/2018 Lt. Lewis refuse to acknowledge he received this Grievance from me by Not signing the form," while the other does not. Doc. [1-1] at 5. Because the parties do not dispute that the September 14 grievance was successfully filed with the County jail, it is immaterial which version is the original.

It is undisputed that Covington filed a formal, written grievance regarding the September 14 incident.[3] Doc. [43-3]. Under the Grievance Policy, the County jail is required to respond within five days of the inmate's grievance. Doc. [43-2] at 13. The inmate then has three days to file an appeal. *Id.* The parties agree that the Jail responded and that Covington did not appeal. *See* Doc. [43-4]. They disagree as to the date of the County jail's response, and accordingly, whether the delayed response terminated Covington's requirement to appeal.

Covington claims he did not receive the jail's response until after he filed the present action on October 1, 2018, and that therefore he could not have appealed it. *See* Doc. [46-1] ¶¶ 23-25. Defendants, relying on the date denoted on the response, claim Covington received it on September 27, 2018, *see* Doc. [43-4], and had to appeal it within three days of that date. *See* Doc. [76] at 9. By failing to do so, they argue, he failed to exhaust his administrative remedies.

Grievance responses contain a signature and date line for the inmate to sign, with a disclaimer that the "[s]ignature of the inmate acknowledges receipt of the Grievance Response and notice of his/her rights to appeal." Doc. [43-4]. Covington did not sign the response. According to Reed, if an inmate refuses to sign the response, then "it gets witnessed by two jail personnel, and it's noted on there that the person refused to sign the response." Doc. [75] at 50-51. But the jail's response to Covington's grievance relating to the September 14 incident does not bear signatures from jail personnel attesting to Covington's refusal. In other words, there was a specific procedure for documenting when the jail provided its response to Covington, and the jail neglected to follow it. As such, the Court finds that there is insufficient evidence that Covington received the jail's response on September 27 to support a finding that he failed to timely appeal. Covington's claim based on the September 14 incident is therefore not precluded by failure to exhaust his administrative remedies.

### D. September 15 Grievance

Covington alleges that on September 15, 2018, Stuckey-Parchmon again refused Plaintiff his medications, ordering him to "get away from [her]." Doc. [33] ¶ 25. According to the

---

[3] The September 14 grievance, which was undisputedly filed, was unsigned by the HUS. Covington believes that undermines Defendants' argument that the lack of HUS signature means that Covington never filed the other grievances. Doc. [78] at 4. But the basis of the Court's finding of non-exhaustion is not the lack of a signature on those grievances; rather, it is Covington's failure to allege that they were submitted to the proper jail personnel, i.e., Covington's HUS or Unit Case Manager.

grievance attached to the Amended Complaint, Covington filed a formal, written grievance with "medical" but never received a response.  Docs. [33] ¶ 28; [28-5].  Plaintiff again did not follow the grievance procedure and thus did not exhaust his administrative remedies.[4]

### E. September 16 Grievance

Covington attests that Stuckey-Parchmon denied him medication for the fifth time on September 16, 2018, at 9:41 a.m.  Docs. [33] ¶ 29; [28-6].  He claims Stuckey-Parchmon told him to "please step out of line," and Officer Coticchio told Covington, "You know what you have to do.  You file your grievance and I'll file my report."  *Id.*  Covington again claims he filed the grievance but never received a response.  *Id.* ¶ 30.  The grievance contains a handwritten note that reads: "Turn in to Lieutenant Lewis on 9/16/18 at 12:50 pm Refuse to sign."  Doc. [28-6].  Superintendent Reed's affidavit states that at 12:50 p.m., the HUS for Covington was Lieutenant N. Beard.[5]  Doc. [43-6] ¶ 8.  Plaintiff does not dispute Reed's affidavit nor argue that he turned the grievance into Lieutenant Beard.  Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies.

### F. September 19 Grievance

On September 19, 2018, after having received no response to his prior five grievances, Covington purportedly filed his sixth and final grievance complaining about the County jail's failure to respond.  Docs. [33] ¶ 32; [28-7].  Five business days later, he began preparing his initial complaint in this action, which was filed on October 1, 2018.  Doc. [46-1] ¶¶ 38-39; *see* Doc. [1].  His Amended Complaint does not indicate how he filed the September 19 grievance, but at the evidentiary hearing he explained he placed it in "a drop box that was located inside the wing in the case worker's office."  Doc. [75] at 25.  Based on Covington's own testimony, he did not file the sixth grievance with an individual designated by the Grievance Procedure and, thus, he did not exhaust his administrative remedies.

---

[4] While Covington's briefings prior to the hearing indicate that he submitted this grievance to "medical," see Docs. [33] ¶ 27; [28-5]; [78] at 2-3; [46-1] ¶ 31, at the evidentiary hearing he stated that he turned it in to Officer Coticchio, who said he would pass it to the medical department.  Doc. [75] at 24.  But Officer Coticchio was not an HUS.  Thus, the inconsistency is immaterial, because neither Officer Coticchio nor the medical department is a proper recipient of grievances, according to the Jail's policy.

[5] The typed affidavit states the HUS was "Lieutenant A. Lewis," but Reed clarified at the hearing that he crossed out "A. Lewis" and handwrote "N. Beard" prior to signing.  Docs. [43-6] ¶ 8; [75] at 45-47.  He did not draft the affidavit and is unsure why the affidavit originally incorrectly identified Lewis as the HUS.  *Id.*

9

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff failed to exhaust his administrative remedies as to the May 10, June 6, September 5, September 16, and September 19 grievances.  All claims arising from those grievances are therefore dismissed.

**IT IS FURTHER ORDERED** that Plaintiff exhausted his administrative remedies for his September 14, 2018, grievance.  All claims arising from that grievance survive.

Dated this 27th day of August, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE